### PRINGLE v DURIVAGE

Ohio Common Pleas, Wood Co

Decided Jan 12, 1937

Welles, Kelsey & Coburn, Toledo, for plaintiffs.

Bowman & Hanna, Bowling Green, for defendant.

### OPINION

By CONN, J.

The plaintiff has filed a second amended petition in each of these cases and to these second amended petitions the defendant has interposed general demurrers. The issues raised have been submitted on well prepared briefs of counsel.

Previously, the defendant filed demurrers to the original petitions and also to the first amended petitions, respectively and the demurrers in each instance were sustained. Now the question of the sufficiency of the second amended petitions is questioned upon the same grounds as the previous pleadings.

These cases fall within the limitations of §6308-6, GC. It is alleged that plaintiff's decedent, Delbert Pringle, was being transported in a motor vehicle driven by the defendant and, at the time and place alleged, sustained fatal injuries. Under the terms of the statute no liability attaches to the operator, owner or person responsible for the operation of a motor vehicle where loss or damage arose from injuries to or death of a guest while being transported in and resulting from the operation of the motor vehicle, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.

In view of the provisions of the statute no right of recovery arises thereunder unless it is pleaded and proven that the proximate cause of the loss or damage was the wilful or wanton misconduct of the operator of the motor vehicle.

The Supreme Court of Ohio has given some attention to the definition and application of the terms "wilful" and "wanton" over a period of years and, finally, in the case of **Reserve Trucking Co v Fairchild, 128 Oh St 519**, with much clarity defined these terms. Unfortunately, the court throughout the opinion and in the syllabus made use of the phrase, "wanton negligence," such phraseology now being under condemnation. This case was decided following the enactment of the guest statute, but the cause of action arose prior to its enactment.

Since the enactment of the statute two cases have reached the Supreme Court wherein the phrase "wilful or wanton misconduct" has been defined and applied, to-wit: **Universal Concrete Pipe Co. v Bassett, 130 Oh St 567, 5 O.O..214, and Vecchio v Vecchio, 131 Oh St 59, 5 O.O. 368.**

In the first case the court pointed out that the term "wanton negligence" is a misnomer and such use is unwarranted and in the second section of the syllabus defined "wanton misconduct" as follows:

"Wanton Misconduct is such misconduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (Higbee Co v Jackson, 101 Oh St 75, third paragraph of the syllabus, and Reserve Trucking Co v Fairchild, 128 Oh St 519, second paragraph of the syllabus, modified.)"

To what extent the Concrete Pipe Co. case modifies the previous cases is not clear. However, in view of the fact that the phrase, "wanton negligence," found its way into both the Higbee and Fairchild cases, it may be assumed that the court had in mind to condemn the use of the phrase, "wanton negligence" and not to prescribe new boundaries for the true exhibition of wanton misconduct. This assumption is somewhat strengthened in view of the subsequent case of Morrow v Hume, Administratrix, 131 Oh St 319, 6 O.O. 21, where the court had under consideration whether excessive speed is sufficient in itself to constitute an act of wantonness, (holding in the negative). It is stated in the opinion, on page 324, that

"when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will, in common probability, result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slacking his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness."

The court then cites Vecchio and Universal Concrete Pipe Company cases.

However, if the Supreme Court in the Concrete Pipe Company case determined to restate and redefine the meaning of the term "wantonness" and prescribe new boundaries for its application and to the extent of such modification, alter and change the substance of the definition as we find it in the Fairchild case, then we are confronted with the task of examining the syntax of the later expression of the court.

In this case the court says that "wan-ton misconduct is such conduct as manifests a disposition to perversity, etc.". In the opinion of the court it is pointed out that wantonness is a synonym for cussedness. We have examined Webster's International Dictionary, 2nd Edition to more fully appreciate the accepted meaning of the several terms used by the court, and we find they are defined in part as follows:

"Cussedness"—disposition to wilful perversity, etc.

"Disposition"—Natural or prevailing spirit of temperament of mind; mode; humor; conscious inclination etc.

"Perversity"—Quality, state or instance of being perverse.

"Perverse"—Deviating from the right, obstinate in the wrong, not disposed to be set right, wilful.

"Wilful"—(Willful) Self - determined, voluntary, intentional, governed by will without yielding to reason, obstinate, perverse, etc.

The foregoing analysis of the terms found in the court's definition of wanton misconduct carries us completely around the circle and brings us out about where we started. That is to say, if wantonness is synonomous with cussedness and if cussedness is a disposition to wilful perversity, and if perversity is the state of being perverse, that is, wilful, we have not clarified the atmosphere of thought, nor have we clearly defined the boundaries between conduct that is wanton on the one hand and wilful on the other.

Over against this, we have what constitutes a wanton act defined in the Fairchild case, expressed in Anglo-Saxon terms, as "implying the failure to exercise any care for the safety of those to whom a duty of care is owing when the wrongdoer has knowledge of the great probability of harm to such persons which the exercise of care might avert and exhibiting a reckless disregard of consequences."

In view of the foregoing and also in view of the prospective duty resting on the trial judge to instruct the jury in concise and understandable language as to the legal definition and application of wanton misconduct, we have concluded to test the sufficiency of the second amended petition by the application of the rule in the Fairchild case.

We now come to an examination of the allegations in the second amended petition. Following certain averments of fact relat-

ing to the existing circumstances and conditions under which the death of plaintiff's decedent occurred, plaintiff avers that the defendant consciously operated said motor vehicle at a speed and in a manner that the defendant knew there was great probability of injury to Delbert Pringle, and at said time failed to exercise any care for his safety.

When we read the entire pleading challenged by the demurrer it seems to us that plaintiff is now within the boundaries of the Fairchild case. That is to say, we have here an averment of actual knowledge of great probability of harm to one whom a duty of care was owing, and also an averment that defendant at said time and place failed to exercise any care for the safety of Delbert Pringle, and exhibited a reckless disregard for consequences.

It is to be observed that the second amended petition contains certain averments of existing facts and circumstances in addition to the allegation of high speed and the intoxicated condition of the defendant, which may be considered as operating or supporting facts for the allegation that the defendant failed to exercise any care for the safety of Delbert Pringle.

The averment that the defendant failed to exercise any care, if standing alone might be nothing more than a legal conclusion. However, when such averment is supported by operative facts it more nearly resembles an averment of ultimate fact. It may be observed further that the plaintiff has adopted substantially the language of the rule or definition of wanton misconduct, and, as in cases where the pleader adopts the language of a statute, such form of averment is generally not a conclusion.

We have carefully examined the well prepared briefs of counsel and the authorities cited. However, we are obliged to determine the issue raised by the demurrer upon the basis of what the Supreme Court had said constitutes wantonness so far as we may understand it, using this definition as a yardstick, when this is done and in the light of the rule of liberal construction as applied to pleadings, required by §11345, GC, we believe the several facts averred state a cause of action within the narrow limits of the Guest Statute.

The demurrer in each case is overruled and defendant given leave to plead further. An entry may be prepared accordingly, saving exceptions.